By this appeal, the defendant requests the Full Commission to review the entire record, listen to arguments of counsel, and to reverse the decision of Deputy Commissioner Haigh.
After careful consideration of the allegations of error and the record in this case, the Full Commission has determined no good grounds exist to amend the award. Therefore, the July 15, 1994 Opinion and Award is accordingly HEREBY AFFIRMED, and the findings of fact as set forth therein are hereby adopted by the Full Commission.
The duly approved Form 21 Agreement is hereby incorporated by reference.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff, who at the time of the hearing was 49 years old, obtained a high school education and a two-year police science degree through correspondence school. Prior to starting to work for defendant as a police officer in about 1988, plaintiff was employed for most of his adult life as a forklift operator at Holly Farms. Additional employment experience includes work as an automotive sales person and working in a poultry hatchery. While working as a police officer for defendant, plaintiff also operated a small engine repair shop, operated a produce truck, and operated a greenhouse nursery.
2. Plaintiff sustained the admittedly compensable injury by accident giving rise hereto on February 27, 1990 when a pick-up truck ran a red light and struck his patrol car on the driver's side door, thereby rendering him momentarily unconscious and injuring his left shoulder, neck and back.
3. Plaintiff was initially treated at the emergency room of Wilkes General Hospital and was then referred to Dr. Bond. He thereafter remained under Dr. Bond's care for a period of 3-4 months and received conservative treatment, including medications, injections, and physical therapy. Although the prescribed physical therapy regimen was for a period of 8-10 weeks, plaintiff did not complete it because it caused pain in his back and legs.
4. Pursuant to the Form 21 Agreement which is dated March 23, 1990 and was approved by the Commission on April 4, 1990, defendant undertook to pay compensation to plaintiff for temporary total disability commencing on February 28, 1990 and continuing for necessary weeks.
5. Not being satisfied with Dr. Bond's treatment, plaintiff sought and received defendant's approval in March 1990 for Walter Holloway, D.C. to assume his care and treatment. Plaintiff experienced some improvement in his pain while under the care of said chiropractor.
6. In May 1990 plaintiff was examined and evaluated by Dr. Kelly, a neurosurgeon, on referral from Chiropractor Holloway with complaints of neck pain, low back pain, and left shoulder pain and pain between the shoulder blades. A CAT scan revealed a degenerated bulging disc at L3-L4.
7. In November 1990 plaintiff was seen and evaluated by Dr. Bennett, an orthopedic surgeon, on referral from defendant. Dr. Bennett thereafter treated plaintiff for low back pain, leg pain, stiffness of the cervical spine, and left shoulder popping through January 21, 1991. By letter dated February 21, 1991, Dr. Bennett released plaintiff to return to work with the following restrictions: no lifting more than 35-40 pounds; no driving longer than 1-2 hours at a time; and avoiding prolonged bending and stooping.
8. In February 1991 plaintiff was examined and evaluated by Dr. Richard Adams, an orthopedic surgeon, on referral from Chiropractor Holloway. Dr. Adams thereafter treated plaintiff on an intermittent basis through April 28, 1993. Treatment rendered included injections, pain medications, exercises, and heat for left rotator cuff injury, cervical strain, dorsolumbar strain, and degenerative disc disease of the lumbar spine.
9. When seen by his family physician, Dr. McMahan, in September 1990 plaintiff was started on anti-depressant medication for treatment of depression which condition Dr. Adams noted in May 1992 and continuing thereafter.
10. As a result of the accident of February 27, 1990, plaintiff sustained left rotator cuff injury, cervical strain, dorsolumbar strain, aggravation of degenerative disc disease of the lumbar spine with bulging disc at L3-L4 and depression. Orthopedically, he obtained the end of the healing period from the injury by accident giving rise hereto and the treatment rendered therefore by April 18, 1991 and he retains 20 percent permanent partial impairment of the back as a result of said accident. As a further result of the injury by accident giving rise hereto, plaintiff is unable to lift more than 35 pounds, he is unable to drive or sit longer than 1-2 hours at a time, and he is unable to engage in prolonged bending and stooping. He has continued to experience pain and is in need of palliative treatment in order to decrease it. In addition, he is in need of psychiatric examination and evaluation and possible treatment for his depression which he sustained due to the injury by accident giving rise hereto.
11. By letter dated May 9, 1991 to plaintiff, defendant's town manager, Chris Carter, advised plaintiff that per the attached letter from Dr. Bennett setting forth restrictions pertaining to his employment as a police officer, the defendant felt that plaintiff should be able to perform the necessary duties required by the department. Plaintiff was requested to report for work to Chief Brown on May 20.
12. On May 20, 1991 plaintiff met with Chief Brown and took with him reports/letters from Drs. Adams and McMahan and Chiropractor Holloway concerning plaintiff's conditions, treatment, and limitations which reports/letters he showed to Chief Brown. Brown then stated that he could not put plaintiff to work with his being on medications for pain and his nerves and in view of the letters from the doctors, and that plaintiff should go back home and if Chief Brown needed him to work, he would call him. Plaintiff was never thereafter contacted by Chief Brown about a job.
13. Defendant, without either notifying the Commission or obtaining Commission approval thereof, ceased payment of workers' compensation benefits to plaintiff in late June 1991 until the end of December 1991.
14. By Form 24 dated February 10, 1992, defendant sought Commission approval for cessation of workers' compensation benefits because of refusal by plaintiff's attorney, Mr. Franklin Smith, to allow plaintiff to cooperate with rehabilitation efforts. In this regard, by his February 4, 1992 letter to defendant's workers' compensation adjusting agent, Mr. Smith had rejected having Comprehensive Rehabilitation Associates assist plaintiff in any way. By letter dated February 5, 1992, Mr. Smith had similarly advised Comprehensive Rehabilitation Associates, Inc.
15. By her March 5, 1992 letter to plaintiff, with a copy to Mr. Smith, the Industrial Commission's Chief Claims Examiner, Martha Barr, ordered plaintiff to pursue prescribed rehabilitation and advised him that his benefits were contingent upon the same. On March 20, 1992, the Commission approved defendant's Form 24 Application to Stop Payment of Compensation.
16. On March 9, 1992, Melanie Hassell, rehabilitation specialist with Comprehensive Rehabilitation Associates, Inc., met with plaintiff at his attorney's office and interviewed him. She did not discuss with plaintiff retraining him for a job. By her March 11, 1992 letter to Dr. Adams, with a copy to Mr. Smith, Hassell requested Dr. Adams to respond to her questions concerning plaintiff's restrictions, whether he anticipated improvement that would change the restrictions, and whether plaintiff was released to return to some type of employment presently and she also requested that he complete a physical capacities form which was enclosed with her letter.
17. By his March 17, 1992 letter to Dr. Adams, plaintiff's counsel advised Dr. Adams that he saw "no reason why you should have to furnish all the information which is put to you in a form which amounts to written interrogatories with reference to Mr. Dancy. If you have new medical evidence to report on Mr. Dancy at this time, will you please do so in your usual and customary manner and forward a copy to me and Edwin Farthing, the attorney who represents Hewitt Coleman. Ms. Melanie K. Hassell should have no role in taking over the case on behalf of the Defendant and the Plaintiff with reference to your medical treatment of Mr. Dancy and even as Mr. Dancy's attorney, I do not want you to become involved in any controversy between yourself and Dr. Bennett; that is an area in which defense counsel can take the depositions of the two doctors involved. If you have or require any further information, feel free to contact my office."
18. By his March 31, 1992 letter to Dr. Adams, Mr. Smith stated as follows:
 "Please find enclosed a copy of the report I received from one of these rehabilitation people. You have already given an opinion with regards to Mr. Dancy. It would be my suggestion to them that you simply refer them to your medical report or previous opinion and not be bothered by these people any more unless there is a substantial change in Mr. Dancy's condition."
19. As of her March 23, 1992 report, Hassell had engaged in the following activities, among others: On March 17 and March 18, 1992 she attempted to contact Chief Brown and Chris Carter but they were unavailable and messages were left for them to return a call to her (so she could discuss available light duty positions for plaintiff); and on March 20, 1992 she contacted Dr. Adams' office (concerning her March 11, 1992 letter to him and the attached physical capacities form) but she was told that he was unavailable. As of her March 23, 1992 report, Hassell planned to contact plaintiff weekly to assess vocational perception and meet with him by the week of April 10, 1992 to assist in vocational expiration, obtain updated capabilities from Dr. Adams by April 3, 1992, contact defendant to assess light duty positions or modified positions by April 3, 1992, and if defendant had no such positions available, begin active job search by April 10, 1992. The stated long-term goal was for plaintiff to return to work with defendant by April 10, 1992.
20. Subsequent to their March 9, 1992 meeting, Hassell never called or wrote plaintiff. The evidence fails to establish that after her March 23, 1992 report, Hassell ever contacted Dr. Adams concerning plaintiff's limitations or defendant concerning a modified or light duty position for plaintiff. In September 1992, Dr. Adams asked his secretary to send copies of his medical records to Hassell in response to her March 11, 1992 requests. Dr. Adams did not respond earlier because he was advised by Mr. Smith in his letter of March 17, 1992 that plaintiff had cancelled vocational rehabilitation and that any further questions should go to them.
21. Since March 15, 1992 plaintiff, on his own initiative, has attempted to secure employment at 56 potential employers but he has not been offered any jobs. When inquiring about employment, potential employers could see something was wrong with plaintiff by the way he walked and some of them asked him about it.
22. Since the injury by accident of February 27, 1990, plaintiff has been unable to work at his greenhouses or small engine repair business due to the injury by accident giving rise hereto.
23. On April 14, 1993 plaintiff was tested and evaluated by Gary Sigmon and Peggy Sigmon, vocational specialists.
24. Considering plaintiff's age, education, and work experience in conjunction with the injury by accident giving rise hereto and the residuals thereof, he has been rendered unable to earn any wages in any employment since February 27, 1990 and continuing through February 22, 1993, the date of the hearing in this case.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Pursuant to the Form 21 Agreement and Award approved by the Commission, defendant undertook to and was obligated to pay workers' compensation benefits to plaintiff at the weekly rate of $221.34 beginning February 28, 1990 and continuing for necessary weeks. However, defendant without explanation and without either notification to or approval of the Industrial Commission ceased paying benefits in late June 1991 and did not resume payment until the end of December 1991. In view of defendant's violation of the provisions of N.C.G.S. § 97-18(a), (b), (d), and (e), there is hereby assessed a ten percent penalty in the amount of $603.94 ($221.34 multiplied by 27 and two-seventh weeks represented by the period from June 24, 1991 to December 31, 1991 multiplied by 10 percent) which shall be paid to plaintiff in addition to compensation which is otherwise due him.
2. As a result of the injury by accident of February 27, 1990, plaintiff has been totally disabled since February 27, 1990 and continuing through February 22, 1993 for which he is entitled to compensation at the rate of $221.34 weekly from February 28, 1990 to March 17, 1992 and from April 3, 1992 through February 22, 1993 and continuing thereafter for so long as he remains totally disabled and provided that, however, he cooperate with any vocational rehabilitation services which may be offered to him by defendant. Plaintiff is hereby ORDERED to cooperate with said vocational rehabilitation services. N.C.G.S. § 97-25 and N.C.G.S. § 97-29.
3. Plaintiff is not entitled to workers' compensation benefits for the period from March 17, 1992 to April 3, 1992 by reason of his failure, through the actions of his attorney, to comply with the March 5, 1992 Order of the Commission's Chief Claims Examiner. Said actions of advising one of plaintiff's treating physicians not to respond to written questions from defendant's vocational rehabilitation specialist concerning plaintiff's conditions, treatment, recovery, ability to return to work and any limitations constitute obstructionist behavior which undermines the goal of attempting to return an injured employee to gainful employment as soon as feasible, considering his medical condition. However, under the facts and in view of the evidence in this case, said refusal to cooperate ceased by April 3, 1992, the date by which the rehabilitation specialist had planned to contact that physician concerning plaintiff's capabilities, contact defendant concerning a light duty or modified job for plaintiff, and contact plaintiff, none of which contacts was made according to the evidence of record and/or the lack of evidence thereof. By that date, there were no vocational rehabilitation services being offered for plaintiff to comply with and the record is devoid of evidence that rehabilitation services were discontinued because of the letters of plaintiff's counsel and their effect on said services. N.C.G.S. § 97-25.
4. It is reasonably medically necessary for plaintiff to continue to receive palliative orthopedic care in order to reduce his pain and thereby give relief from the injury by accident giving rise hereto and to receive psychiatric evaluation and possible treatment for depression which he experiences as a further result of the injury by accident giving rise hereto. Defendant, accordingly, is responsible for the costs thereof in amounts approved by the Commission. So that there will be continuity in plaintiff's orthopedic treatment, it is ORDERED that plaintiff submit himself to only Dr. Richard Adams for treatment of the orthopedic conditions which he sustained due to the injury by accident giving rise hereto. IT IS FURTHER ORDERED that plaintiff submit himself to only the psychiatrist to be recommended by Dr. Richard Adams for examination and evaluation as well as possible treatment for depression which is due to the injury by accident giving rise hereto. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based upon all of the foregoing, the Full Commission enters the following
AWARD
1. Subject to counsel fee hereinafter approved and less a deduction by reason of compensation benefits already paid, defendant shall pay compensation to plaintiff at the rate of $221.34 per week from February 28, 1990 to March 17, 1992 and from April 3, 1992 through February 22, 1993 and continuing thereafter for so long as plaintiff remains totally disabled; provided, however, that plaintiff cooperate with any vocational rehabilitation services which defendant may offer. As much of said compensation as has accrued shall be paid in a lump sum without commutation.
2. A reasonable attorney fee in the amount of 25 percent of the compensation benefits payable herein is hereby approved for plaintiff's attorney. Said attorney fee shall be paid out of the accrued benefits and out of the benefits which will hereafter accrue by defendant making direct payment to plaintiff's counsel of every fourth week of compensation benefits payable under the terms of this Opinion and Award.
3. Defendant shall pay to plaintiff the sum of $603.94 as a penalty for the violation of the provisions of N.C.G.S. § 97-18. This penalty payment shall not be subject to deduction of an attorney fee for plaintiff's counsel.
4. Defendant shall pay all medical expenses, including those incurred for future medical treatment and psychiatric examination and treatment in order to effect a cure, give relief, or lessen the period of disability from the injury by accident giving rise hereto, when bills for the same shall have been submitted through defendant's adjusting agent to the Industrial Commission and approved by the Commission.
5. Defendant shall pay the costs, including an expert witness fee in the amount of $700.00 to Dr. Richard Adams, in the amount of $125.00 to Dr. Thomas McMahan, and in the amount of $180.00 to Gary Sigmon, Ed.D. In addition, defendant shall pay as part of the cost in this case the sum of $78.03 to Carole Byrd, General Stenographic Reporter, as her appearance fee and mileage, together with interest, in connection with the deposition of Dr. Adams which was scheduled for April 8, 1992 but which was postponed or canceled because of defense counsel's inability to attend.
6. Defendant shall pay the costs.
This the _____ day of __________________________, 1994.
 S/ _________________________ JAMES J. BOOKER COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
JJB:mj